All right, our first case is 24-4089 United States v. Ogilvie, and I think Ms. Stengel, you're up first. Welcome. May it please the Court, Jessica Stengel appearing on behalf of Mr. Ogilvie. A law that infringes on a person's Second Amendment rights is presumptively unconstitutional. The presumption can be overcome, and the government bears the burden. Mr. Ogilvie submits that the government has failed to satisfy that burden and asks this Court to find 922N on its face unconstitutional. The government offered two primary arguments to overcome the presumption, and neither are persuasive. The first argument the government offered is bail. Quite frankly, history doesn't support this, but let's go through the tests that Bruin set out and that Rahimi demonstrated how it worked. First, the government must identify a historical firearm regulation. Mr. Ogilvie submits that at that first step, the government fails. At the founding, bail was not a historical firearm regulation, and the government has offered no evidence to suggest that anyone was disarmed as a function of bail at the founding. Assuming we can get past that. Although for serious felonies, bail was not permitted, and when bail was not permitted, that was a complete deprivation of your liberty, including your right to keep and bear arms. Why wouldn't the restriction here be a lesser intrusion on Second Amendment rights than a complete deprivation of liberty? Why isn't that a good comparator? And that's what most of the other cases, the other circuit cases, have latched onto. We've only had two circuit decisions that have found bail to be a relevant analog. And I would first argue that the evidence for, quote, serious felonies is split amongst, there's sort of the, split amongst not scholars, but there were two theories of camp at the founding. There was the dissenting view and the primary view. And it was, bail was not contemplated, really, for serious felonies. And the bail that was contemplated wasn't a deprivation of liberty, it was a deprivation of property. Because the primary and motivating concern for bail was making sure that people show up. Second of all, the government has offered no evidence to suggest that the deprivation of liberty was concomitant with the deprivation of a Second Amendment right. Which makes sense, given that for those who couldn't find sureties, who couldn't find someone to put forth some type of collateral to ensure their appearance, they were often, if they were detained, it was often at the sheriff's or the magistrate's house. And in fact, the only, I think Blackstone identifies that the only situation in which there was a deprivation of the ability to have a gun was for libel and slander. So, which, quite frankly, was a serious felony back at the founding. Don't you think that, you know, a crime like murder, maybe a serious violent crime, don't you think part of the rationale at the founding was public safety? No, Your Honor. For certain types of defendants, you think it was purely making sure they show up on time? What I think is absolutely irrelevant, the government has offered no evidence to suggest that anything other than appearance was the motivating purpose for bail. What about just the fact that they were capital crimes? There was automatic bail, wasn't it? Or no bail? Wasn't it automatic detention for capital crimes? For capital crimes? And capital crimes were much more serious. There were a lot more capital crimes then than there were now. Everything was a capital crime. Everything was a capital crime? No, I'm sorry, I interrupted you. Go ahead. Most every felony was a capital crime, and we didn't have the significant procedural protections in place that we do now. So most every felony was a capital crime, and was there an individual determination in a capital case in our founding era? Was there an individual determination in a capital case of whether they were entitled to bail? Or was it? No, Your Honor. It was detention. My understanding from having looked at far too many law review articles is that there was no individual determination, as you say, but none of the procedural protections that Rahimi found critical to allowing any type of infringement on an individual's Second Amendment rights. There was no notice. Let me just push back this a little bit before we get to the procedural protections. Just the concept that for all capital crimes in our founding era, you were not entitled to bail. It was pretrial detention. And you're suggesting that that had nothing to do with safety and only had to do with appearance and guaranteeing appearance? Yes, Your Honor, and that is based on… What's the basis for that? Myriad law review articles. The first, the one that comes to mind is the 2024 Harvard Law Review article by Mason and Funk. There's a 2024 law review article in the University of Pennsylvania, and I will file it for the AHA with the author's name. What that gentleman cites is that not only was there no individual determination, but also at the founding, disarmament was not a consequence of bail. And there's been no evidence to suggest that there was. And it's the government's burden to come forward with affirmative evidence, not just sort of high-minded ideals. And Justice Barrett, in her concurrence in Rahimi, cautions that if we take a principle too far, if we read it at such a high level of generality, the right loses all meaning. And that's what the government… We do have some help here, though. You referenced that two circuits have opined on this. I assume you're talking about the Fifth and the Sixth. Yes. The Kerosene Corps. Yes, Your Honor. And neither is favorable for your position. Is that correct? That is correct. And if we were to adopt the reasoning of those two cases, would that be the end of your appeal, or do you distinguish them in some fashion other than saying that they're wrongly decided? I'm going to try and answer, and please interrupt me if I don't answer your question. I think those cases, as they both rely on bail, fail to undertake the analysis. And it's a rigorous analysis that Bruin required. And they are doing precisely what Justice Barrett cautions against. They are saying that bail, as we understand it today, in 2025, disarming people, we have processes in place, must have been the same at the founding. And that's incorrect. There's no evidence supporting that. And what I would argue, what Mr. Ogilvie submits, is that doing what Bruin requires produces a different result. Well, Rahimi acknowledges that categories of people can qualify. And here we have a category. Yes, Your Honor. And I think the distinguishing feature there is the categories of people that Rahimi identified are people who have already gone through what Rahimi calls the significant procedural protections, the processes involved. There's notice. There's hearing. There's an opportunity to respond. And then there's a judicial determination about a particular individual. Well, does that, is that really, I understand the difference where in Rahimi you're talking about there's a particular person who's endangered, a domestic partner or something. Whereas here it's a more general societal interest and administration of justice, prosecutors, witnesses, so forth, that may be endangered. I understand that distinction. But still, Rahimi says that the opinion doesn't suggest, that's the court's word, doesn't even suggest that you can't have categories of people. And there is this societal danger, potentially, to witnesses, to prosecutors, to the administration of justice. Why isn't that good enough? If it was good enough for those two circuits, why shouldn't it be good enough for us? It's not good enough because the categories of people that Rahimi suggests might be able to be disarmed are fundamentally different than people who are simply charged with a crime. That is a critical distinction. Second of all, I'm going to quibble with your Honor's notion that public safety today is what controls this decision. Bruin makes clear it does not. We need to, if we're going to go with bail, we look at what bail was doing at the founding. And the government has not shown anything to suggest that bail at the founding was motivated at all by a fear of danger or public safety. Bail at the founding unequivocally, regardless of the crime charged. Any discussion of bail was to ensure a person's presence. Well, in Rahimi, and back to categories, two of the categories the court seems to reaffirm are legitimate categories are felons and mentally adjudicated individuals for unfitness. And neither of those have a specific victim like Rahimi in a domestic order. Instead, it's a societal protection, isn't it? That if you're a felon, we don't want you to have a firearm because you're the kind of person who might hurt someone. Seems to be the same thing with someone under indictment. And it's not as though there was an individual determination for that person who's under indictment, but there is a grand jury indictment. And so it's not as though it is just a willy-nilly decision. A body of your fellow citizens has determined that there's probable cause that you committed an offense. So it's not bare naked where someone is just completely unable to respond or have his or her side heard. I agree, Your Honor. I think there's a distinction, though, that we need to be careful to draw. That an indictment is, as you put, it is simply a charge that you may have done some wrongdoing. And there's nothing to say that that charge will stick. And you can't hold me to this because I'll probably be back arguing 922-G1. With both felons and those who have been determined to be mentally ill, we have a judicial determination about that particular individual. And I would argue that we need to be careful with felons. And I think we can learn from, again, Justice Barrett, but this time her dissent in Cantor v. Barr, that the mere fact of it being adjudicated a felon should not be outcome determinative as felons are different and individuals are different. And I think Congress, quite frankly, can easily fix this as they know how to define crimes of violence. But I think what we are dealing with here in 922-N, we have a bizarre restriction on indictees' Second Amendment rights that has no analog, not even relevantly similar, not even similar in history. And unless there are further questions, I'm going to reserve the floor to you. I was actually curious. You've brought only a facial challenge.  And do you think your argument would work equally well for an as-applied challenge by your client? Yes, Your Honor. This is the rare subsection where I think a facial challenge is appropriate. I think the fact of the indictment itself, this is a strict liability crime. Your Second Amendment rights are severely curtailed by the fact of the indictment. So regardless of what you're indicted for, it's irrelevant. Judge Easterbrook said maybe it would be unconstitutional for an antitrust violator, but not for someone who were violent. Do you disagree with that position? Yes, I do, Your Honor. And again, I think I hearken back to Justice Barrett's dissent in Cantor v. Barr. If we're going to judge people, if we're going to make wholesale arguments about Second Amendment rights, minimally it should be after that judicial determination in which the defendant is afforded what I'm going to use shorthand for as due process. I think the fact of the indictment is what you're indicted for is irrelevant under 922F. So I will reserve the remainder of my time. Thank you.  May it please the Court, Nathan Jack for the United States. I'd like to begin just by clarifying on safety as a purpose for pretrial detention. This was discussed extensively in the United States response brief, specifically the Funk and Mason article that my friend referenced. And their conclusion was that contrary to the conventional academic wisdom, the historical record reveals that bail clearly served a public safety function. And it did that by looking at actual historical data in Pennsylvania at the time of the founding and found that there was a fuzzy line between peace bonds and appearance bonds, and that, in fact, bail and pretrial detention was for public safety, not just for appearance. That was one example in one location for a six-month period, right? It looked at more than a six-month period. But yes, but also Pennsylvania was probably the most permissive when it came to bail. They were the early adopters of the reformed model. And they also had a more narrow list of capital offenses than most other states did at the time. So if there were ever a place where bail was the most prevalent, it would have been in Pennsylvania at that time. And, again, it still found that most people were detained, and they were detained for public safety reasons, not just appearance. Is that the reference in the bonds in that case to good behavior? I mean, where does that come from? Yes, correct, for bonds for good behavior. So you could interpret that to be not just good behavior by sticking around and appearing, but good behavior by not committing. Precisely, by not committing crimes, by not being violent. At least that's how it's interpreted. Correctly, that is what the scholars said, is that that was equivalent to a public safety function rather than just an appearance. And so bail, and specifically we're not talking about bail, but pretrial detention did serve a public safety function. Now, the only question before this court is whether 922N is facially unconstitutional, and that is the most difficult challenge to mount successfully. All we need is a single application to defeat a facial challenge, and I think we have that here with Mr. Gilbey's own case. This is someone who has repeated firearms violations, someone that the district court deemed to be a dangerous person, to be the very type of person that poses a threat that Congress has been trying to protect against. 922N is certainly constitutional, as applied to Mr. Gilbey, and there are two primary principles from our historical tradition of firearms regulations to support that. The first, as I've kind of already alluded to, is pretrial detention, and the second, of course, being protections for dangerous individuals, whether individually, through surety laws, or going armed laws, or also categorically. But, you know, 922N really assumes that all indicted felons are dangerous, in a sense. You know, whether it's Martha Stewart or Donald Trump or anybody else, you can't, you know, obtain a gun if you're under indictment. And there's, I think Judge Phillips raises a good point, well, an indictment is some type of determination, but it's not an individualized determination of dangerousness or public safety. So 922N really seems, you know, very overbroad for the purposes that the government set forth. How do we deal with a statute that seems to sweep in a lot of behavior that couldn't seriously be considered for public safety reasons? Yeah, so the first principle doesn't deal with dangerousness at all. And if we look at the founding, many capital offenses weren't, forgery, for example, was a capital offense at the founding. And so those who were indicted of forgery at the founding were detained. There was no discretion there. Detention was required. And even though there was no sense of danger, no public safety necessarily for forgery, they were still detained. They did not have a Second Amendment right to possess a firearm in that instance. So under that historical analog, Congress today can, under 922N, prohibit those under a diamond, even if it's not for a dangerous felony, from receiving or shipping or transporting a firearm. It's only on that second principle that then kind of turns to maybe more of a dangerous element. But I think specifically when we look at categorical disarmament, whether the underlying offense itself was dangerous, I think Congress was right to recognize that there is a public safety concern of those under indictment given the fraud and stressful period and relying on a public safety reason rationale there. Was the October 2022 offense or episode in which there was gunfire at an automobile, was that, is that part of the proper consideration as far as an applied challenge here and that the gun was received before that time? I think so. And I think we can look at Rahimi to that. Rahimi also looked at the specific conduct of the offense at issue. And so here, even though he was already in indictment and already had the gun, I think we can still look to what transpired. But even if we don't look at that incident offense, we can look at what he was under indictment for. This is someone who became a restricted person under Utah state law for felony discharge of a firearm. Which I don't know what that means. He shot it in his backyard? He shot it. Again, it was another instance of shooting it into, I believe, a group of people. And then, as a restricted person, he possessed a firearm. And that's what he was under indictment for. So we can look, even if we set aside the conduct of this incident offense, this is still someone that this court reasonably found is a dangerous person, the very type of person that Congress is trying to prevent for public safety reasons. What about an antitrust violator? Again, I think that's akin to forgery, which at the founding, they were detained. Even though it was not a dangerous felony, it was a capital offense they were detained for. And so someone who is under indictment for antitrust still reasonably, not reasonably, but under the historical analog can be disarmed under 922N. But at the very least, 922N is certainly constitutional as applies to people like Mr. Ogilvie, people who commit violent felonies, people who are dangerous. And again, all we have before this court is a facial challenge. Can you address the comment from Appellant's counsel that basically there's just no evidence that the capital, the practice of not allowing bail and having pretrial detention for capital defendants or defendants indicted on capital crimes is somehow not related to public safety? I mean, it does seem kind of like common sense to think that a more serious crime, and there were many at that time that was punishable by death, would presumably have something to do with public safety in terms of not allowing bail. But we can't just rely on common sense, I suppose. What evidence is there that this was based on public safety reasons as opposed to, again, just guaranteeing appearance? Yes, again, the Funk and Mason article discussed extensively in the United States response brief. Anything besides the Funk and Mason article? That is the most prevalent one that looks at actual historical data to see what magistrates of the peace were actually doing at the time. I mean, there's certainly some historical data, isn't there, indicating otherwise? As far as I can tell, a lot of these law review articles are based on just conventional wisdom at the time. What do you mean by that? Meaning it's professors saying what judges say, what professors say what judges say. The Funk and Mason article actually looks at historical data, digs into the record books of the justice of the peace to see, okay, what were the reasons given for these issuing to show that it was for public safety reasons? There's a reason why all the circuit courts to consider this have found that there was a public safety function at the time. The historical data does play that out. What should we do about my over-breath concern? I think you're standing tall on that, equating forgery and antitrust, but it does seem that Ann sweeps in far more persons than would have been envisioned at the founding, even for non-bailable offenses. Maybe Mr. Ogilvie was a violent person, but a lot of indictees are not violent, and 922 Ann doesn't care. Should that be part of our, if we were in the First Amendment land, we'd be worried about over-breath. Shouldn't we be worried about it in Second Amendment jurisprudence also? No, because again, we look at the way Bruin and Rahimi have outlined it, and it is kind of a different analysis than we find in other constitutional amendments. We no longer have means and scrutiny for Second Amendment. We look at historical analogs. And that means in some instances it is going to be broader than maybe rights of other amendments. Sometimes it's going to be narrower. Well, there's the why and the how, and I guess here I'm concerned about the how. Yeah, and we can look at the how, and the how matches on to pretrial detention at the time of the founding, because again, pretrial detention went to more than just those who were violent. It went to serious offenses, which included horse theft, which included forgery, among these other cases. And if the court is concerned about it, it can certainly consider that as an applied challenge in the future. Again, the only question before this court is whether 922 Ann is facially unconstitutional. And I think certainly, at least as applied to violent people, there is no question that it is constitutional. So if the court is concerned, it can narrow it to that. But I think that we can look to the historical analog and see that at the founding, the Second Amendment didn't apply to those indicted of a serious offense, even if it was a nonviolent one.  All right, if there are no other questions. Does your argument extend past Kiros and Gore, or do those cover your whole argument today? I think it largely falls within those cases. I think there may be things on the outskirts that, but I'm trying to think off the top of my head of what that necessarily would be. But I think those are great guiding principles, and I think if the court were confined to a doxys to Gore and Kiros, I think we would be square with that. All right, this is Court Hoofer, thank you. Thank you. Stengel, you had some rebuttal? Just to follow up on a few things that my learned friend mentioned. 922N does not simply apply to, quote unquote, violent people. It applies to anybody, anywhere who's been indicted for any reason. To assume bail, which again, the government has offered no affirmative proof that it was designed for public safety at the founding. To assume that bail is the proper analog for disarming anybody who's been indicted would be a misstep and a misapplication of brewing in this application. And you know what? I think I'm going to leave it there and submit the case for decision. Thank you. Thank you, Counsel. We appreciate the arguments. We'll look forward to seeing everybody back on other 922 subparts. So keep reading those law review articles. Cases submitted and Counselor excused. Thank you.